IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

_____

| | | |
|---|---|---|
| RICHARD JAMES JOHNSON, PRO SE, | § | |
| TDCJ-CID #1005689, | § | |
| Previous TDCJ-CID #616683, | § | |
| Previous TDCJ-CID #581721, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:07-CV-0191 |
| | § | |
| JOE GRIMES ET AL., | § | |
| | § | |
| Defendants. | § | |

## SUPPLEMENTAL REPORT AND RECOMMENDATION

Plaintiff RICHARD JAMES JOHNSON, acting pro se and while a prisoner incarcerated

in the Texas Department of Criminal Justice, Institutional Division, has filed suit pursuant to

Title 42, United States Code, Section 1983 complaining against the above-referenced defendants

and has been allowed to proceed pursuant to the three "strikes" exception of 28 U.S.C.

§ 1915(g). The Court issued a Report and Recommendation on January 12, 2009, which was

subsequently withdrawn. Plaintiff's claims in this cause which are duplicative of those asserted

in cause no. 2:07-CV-0074 were dismissed with prejudice as malicious on January 28, 2009; and

plaintiff's claims against defendants KELLY and GERRALDO were dismissed without

prejudice for failure to prosecute on March 30, 2010, in accordance with the Report and

Recommendation issued June 2, 2009.

Plaintiff claims imminent danger of serious physical injury stemming from an alleged

failure to protect him from inmate attack. By his complaint, plaintiff states he has been

transferred from other units twice because his "life was in danger from threats and extortion from

Crip gang members . . .." Plaintiff says on May 14, 2007, he was assaulted by three black

inmates he could not identify[1] but who were members of the gangs he had complained were trying to extort money from him. Plaintiff complains he wasn't given the opportunity to view a photographic lineup of inmates.

Plaintiff alleges that, when he told defendant ROWLANDS of the May 14th assault, defendant ROWLANDS responded plaintiff he needed to "f**k, fight, or hit the fence." By his May 30, 2008 Briefing Order response to Question no. 2, plaintiff states he never saw defendant ROWLANDS before May 14, 2007 and that all the events involving him occurred on that day.

Plaintiff claims that, on May 21, 2007, defendant GRIMES, the unit grievance investigator, and classification officers SHIP, HASKINS, and KELLY, refused to take action after plaintiff was assaulted by other inmates.

Plaintiff claims on June 26, 2007, defendants SLOAN, SHIPP, HASKINS and NOVAK refused for the second time to take plaintiff's life endangerment concerns into consideration. Plaintiff claims he is in imminent danger of serious physical injury.

When asked to state what he wrote in his life endangerment reports, grievances, etc. complaining of attempted extortion, plaintiff's answer[2] was nonresponsive, recounting, instead, an incident involving a guard and giving rise to claims plaintiff pursued in cause no. 2:07-CV-0074. These claims were dismissed from the instant suit on January 29, 2009 as duplicative.

As to defendant GRIMES, plaintiff says he sent GRIMES three written complaints, three

---

[1]See plaintiff's May 30, 2008 Questionnaire response to question no. 11.

[2]Plaintiff responded he submitted a March 29, 2007 grievance stating that an unidentified officer had asked him why he was a Muslim, made pejorative remarks, and told the white prisoners that he would buy a pack of cigarettes for anyone who beat plaintiff. Plaintiff says he went to his cell in safety and waited for the next shift when he told an Officer Johnson, not a defendant in this suit, who then assaulted plaintiff, told white gang members plaintiff was a snitch and was the reason their cells were being searched, and placed plaintiff in solitary in an unsanitary cell. The Court notes plaintiff already has a previously filed lawsuit pending concerning this incident, cause no. 2:07-CV-0074; and these claims reasserted in the instant suit were dismissed as malicious by Order issued January 28, 2009.

grievances, and three life endangerment reports complaining that "crips, and bloods were trying to extort [plaintiff] because [he] had paid in the past on other units – and now these inmates that where [sic] on these units with [plaintiff] - are now here on this unit . . .."

When asked what he felt should have been done by defendants GRIMES and the Classification Officers, defendants SHIP, HASKINS, and KELLY, plaintiff responded, in his May 30, 2008 response to question no. 15, that they should have placed him in transit, had his claims investigated by officers who are "nonbiased," sent all the information to Bureau of Classification headquarters, and gone by their decision. Instead, he says, defendants held back pertinent information and did not inform the B.O.C. of the incidents in order to keep plaintiff on the unit for further retaliation.

Plaintiff requests an emergency hearing into his claims and trial by jury. The ultimate relief plaintiff appears to want is a unit transfer.

## JUDICIAL REVIEW

When a prisoner confined in any jail, prison, or other correctional facility brings an action with respect to prison conditions under any federal law, the Court may evaluate the complaint and dismiss it without service of process, *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990), if it is frivolous[3], malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. 1915A; 28 U.S.C. 1915(e)(2). The same standards will support dismissal of a suit brought under any federal law by a prisoner confined in any jail, prison, or other correctional facility, where such suit concerns prison conditions. 42 U.S.C. 1997e(c)(1). A *Spears* hearing need not be

---

[3]A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir. 1993); *see, Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991)[4].

The Magistrate Judge has reviewed plaintiff's pleadings and has viewed the facts alleged by plaintiff, as well as the evidence presented at the June 30, 2009 hearing to determine if his claim presents grounds for dismissal or should proceed to answer by defendants.

In the January 12, 2009 Report and Recommendation the Court recognized plaintiff's claim, whether implied or explicit, that the investigation of his life endangerment claims was biased[5] and that facts were not conveyed to the Bureau of Classification. Nevertheless, plaintiff did not allege any facts to support these conclusory allegations. To the very date of this Report and Recommendation, plaintiff has not provided any factual allegations in that respect or identified which, if any, of the defendants were responsible.

The Court found that, although it was clear plaintiff was dissatisfied with the results of the investigation(s) of his life endangerment reports and the unit classification committee's failure to transfer him to another unit, nevertheless, the facts presented by plaintiff did not show he was in imminent danger of serious physical injury at the time he filed the instant suit, more than three months after the alleged attack. Plaintiff objected that the Court should have at least conducted a *Spears* hearing.

The Court, out of an abundance of solicitude for a pro se litigant, ordered the defendants to answer and conducted a June 30, 2009 hearing to consider evidence on defendants' assertion

---

[4]*Cf, Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986) ("Of course, our discussion of *Spears* should not be interpreted to mean that all or even most prisoner claims require or deserve a *Spears* hearing. A district court should be able to dismiss as frivolous a significant number of prisoner suits on the complaint alone or the complaint together with the *Watson* questionnaire.").

[5]See plaintiff's May 30, 2008 Questionnaire response to question no. 15 stating defendants should have had his claims investigated by officers who are "nonbiased."

4

of qualified immunity and whether plaintiff is entitled to proceed In Forma Pauperis under the Title 28, United States Code, section 1915(g) exception to the bar against pauper status.

A hearing was also conducted in each of plaintiff's other remaining cases, 2:07-CV-0074 and 2:07-CV-0190.

## LITIGATION HISTORY

Review of the US party/case index reveals plaintiff has sued approximately 65 times in federal district court, 36 of which were civil rights lawsuits, at least nine of which were dismissed as frivolous, malicious, or for failure to state a claim[6] and at least as many more of which were dismissed based on plaintiff's three-strikes status.

## JUNE 30, 2009 HEARING ON QUALIFIED IMMUNITY AND PAUPER STATUS

At the June 30, 2009 hearing to consider evidence on defendants' assertion of qualified immunity and whether plaintiff is entitled to proceed In Forma Pauperis under the Title 28, United States Code, section 1915(g) exception to the bar against pauper status, defense counsel informed the Court initial disclosures had been made to plaintiff, including his medical, disciplinary, and life endangerment records.

At the hearing, <u>plaintiff stated his lawsuit was about two attacks, both of which he reported and which were investigated</u>.  Plaintiff complained the investigations did not result in a transfer to another unit.  The Court reviewed plaintiff's Classification and Disciplinary records[7] showing plaintiff's claims of extortion by the Crips and the investigations of these complaints as

---

[6]See *Johnson et al., v. Lufkin Daily News*, et al., 9:01-CV-223 (E.D.Tex.); *Johnson v. Robinson, et al.*, 9:03-CV-47 (E.D.Tex.); *Johnson v. Harris Coumty, et al.*, 4:93-CV-309 (S.D.Tex.); *Johnson v. Cole*, et al., 6:95-CV-473 (E.D. Tex.); *Fowler, et al., v. Evans, et al.*, 6:95-CV-559 (E.D.Tex.); *Johnson v. TDCJ Board, et al.*, 1:03-CV-717 (W.D.Tex.); *Johnson v. Casasanta, et al.*, 2:95-CV-169 (N.D.Tex.); *Johnson v. Parks, et al.*, 5:03-CV-24 (N.D.Tex.); and *Johnson v. Bering, et al.*, 6:95-CV-472 (E.D.Tex.).

[7]All records referenced herein as having been reviewed during the *Spears* hearing were accompanied by a business records affidavit.

well as of his claims of assault. Plaintiff testified one assault occurred on the recreation yard and consisted of punches to the stomach and back by at least two inmates. Plaintiff testified he did not go to the infirmary or make any complaint to medical personnel concerning this assault.

Plaintiff testified another assault occurred about a week later while he was going to chow hall, he was "jumped on while in the sally port." When plaintiff's grievance concerning the second attack was investigated, an Officer Kemp said he was present at the time plaintiff claimed to be assaulted and that plaintiff was not assaulted. At the *Spears* hearing, plaintiff testified Officer Kemp had earlier told him he would lie about the incident because Officer Kemp was not at his assigned duty station at the time.

Doctor Leeah, reviewing plaintiff's medical records in open court, noted plaintiff was in the infirmary on May 15, 2007 and was seen at 0835 hours on the complaint that he was assaulted by two inmates the day before and was hit in the back. Doctor Revell examined plaintiff and found no bruising, no contusion, no abrasions, and an equivocal or uncertain spring test for pain. He concluded it was a normal exam but ordered x-rays to rule out any rib fracture. The x-rays showed no fracture or abnormality.

The Court also pointed out plaintiff's medical records showed a May 14, 2007 nurse's exam which found an area of plaintiff's back was red, slightly swollen, and painful to the touch. Plaintiff was given Ibuprofen.

Plaintiff's complaint to the nurse on May 14th was that an inmate in line behind him kept hitting him in the center of his back with a closed fist. This account is very different from plaintiff's subsequent claim to Dr. Revell that he had been assaulted by two inmates, as well as his present claim to the Court that he was assaulted by three inmates while in the sally port.

Sergeant Maes, the Safe Prisons Coordinator at the Clements Unit and not a defendant in

6

this suit, was sworn and gave testimony that, following an initial investigation of plaintiff's report of the May 14, 2007 attack, the matter was referred to her by defendant Warden GRIMES for further investigation, if possible. Sergeant Maes stated she interviewed plaintiff concerning the May 14, 2007 incident, at which time plaintiff provided some aliases of his attackers and some housing areas at which he felt they were assigned. On that basis, Sgt. Maes said she was able to identify some offenders as possibly being plaintiff's attackers. She stated that, since a week had passed since the alleged attack, she felt plaintiff's safety would not be endangered if she performed some cell searches of those inmates' cells. Sergeant Maes stated that whatever identifying characteristics an inmate is able to come up with are used to identify alleged attackers, that their names and I.D. numbers were not required for an investigation to be conducted. Sergeant Maes testified her cell searches produced evidence the inmates were engaged in illegal activity such as gambling, trafficking and trading, etc., but found nothing to indicate they planned to harm plaintiff. She stated she did not interview such inmates because that would have placed plaintiff in danger.

Reviewing page 83 of the Offender Protection Investigation, Sgt. Maes stated that, when she interviewed plaintiff on May 16, 2007 on a life endangerment complaint, plaintiff alleged he was assaulted in the sally port area on his way to breakfast and that another offender there had previously been housed at the Ferguson Unit, that plaintiff had paid extortion money there, and he thought that was why he was being pressured to pay protection at the Clements Unit. Nevertheless, records showed the identified inmate had never been assigned to the Ferguson Unit. Further, of the two inmates in a cell number given by plaintiff, neither had ever been assigned to the same housing unit with plaintiff at the Ferguson Unit and no name provided by plaintiff matched either of those inmates. Further, another inmate plaintiff had identified as a

7

Crip member was determined not to be a member of the Crip gang.

Further, at page 52 of the Offender Protection Investigation, was recorded Sgt. Maes' investigation of plaintiff's allegation that he owed money and Crip gang members wanted him to pay, but he didn't have any money.  Investigation revealed no physical evidence.  Cell searches produced some "kites[8]" indicating other illegal activity, but no evidence was found relating to plaintiff.  Plaintiff had turned in two "kites" he represented contained threatening language directed at plaintiff, but, on examination, Sgt. Maes determined plaintiff had written them himself.

Sergeant Maes testified she is certified in the analysis of or handwriting comparison of "Questionable Documents" and has nine years' experience in that field.  She stated she found previous threatening notes turned in by plaintiff at another unit in another investigation which were determined to be written by plaintiff.  Based, among other things, on the words utilized, the spelling, and the slant of the writing, she determined plaintiff had written the two allegedly threatening "kites" relevant to his claims in this lawsuit.  Sergeant Maes testified she also secured handwriting examples from the two offenders whose names were signed on these two threatening kites and determined they had not written them.  She stated plaintiff produced no further evidence to prison officials to substantiate his claims of life endangerment, so there was nothing further for her to investigate.

Sergeant Maes testified when a life endangerment investigation is complete, the results are forwarded to the Classification Committee members for their review and consideration when determining transfer issues.

_____

[8]Messages passed between an inmate in one cell to one in another.

**FAILURE TO STATE A CLAIM AND FRIVOLOUS CLAIMS**

As plaintiff himself noted during the *Spears* hearing, he has not sued anyone who actually conducted any of the investigations he contends were intentionally skewed to keep him on the Clements Unit. Additionally, plaintiff failed to allege any fact to support his allegation of bias in the actual investigations and has not identified what information was withheld from the State Classification Committee or who was responsible. Thus, the only claim plaintiff can assert against the members of the Unit Classification Committee, including defendants GRIMES, SLOAN, SHIPP, NOVAK, and HASKINS, is that they did not make the decision he wanted, *i.e.*, approval of a unit transfer. Plaintiff only has a right to be free from deliberate indifference to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 1978, 128 L.Ed.2d 811 (1994). By his allegations, plaintiff has failed to assert a claim of deliberate indifference by defendants GRIMES, SLOAN, SHIPP, NOVAK, HASKINS, and the other members of the unit Classification Committee.

Plaintiff has no constitutional right to be confined in a particular location. See *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). To the extent plaintiff's claim is based on the belief he has such a right and can demand a unit transfer regardless of the finding of the unit and/or state classification committees, his claim lacks an arguable basis in law and is frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

## QUALIFIED IMMUNITY

Qualified immunity is an affirmative defense which protects public officials from civil liability while performing discretionary functions when such acts or omissions were objectively reasonable in light of clearly established law. *Colston v. Barnhart*, 130 F.3d 96, 99 (5ᵗʰ Cir. 1997) *citing Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5ᵗʰ Cir.), *cert. denied*, 506 U.S. 973, 113 S.Ct. 462, 121 L.Ed.2d 371 (19892); *Siegert v. Gilley*, 500 U.S. 226, 233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). The facts alleged, taken in the light most favorable to the party asserting the injury, must show that the officer's conduct violated a constitutional right. *Price v. Roark*, 256 F.3d 364, 369 (5th Cir.2001). Also, the constitutional right must be clearly established such that it would be clear to a reasonable officer that his or her conduct was unlawful. *Id.* The Court may address either prong first. *Pearson v. Callahan*, _____ U.S. _____, _____, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).

In this case, as noted earlier herein, defense counsel informed the Court at the June 30, 2009 hearing that initial disclosures had been made to plaintiff, including his medical, disciplinary, and life endangerment records. Plaintiff did not request further discovery or argue a lack of discovery prevented him from countering evidence or argument presented at the hearing.

In light Sgt. Maes' uncontested testimony that when a life endangerment investigation is complete, the results are forwarded to the Classification Committee members for their review and consideration, it appears defendants GRIMES, SLOAN, SHIPP, NOVAK, HASKINS, and any other members of the classification committee relied, and were entitled to rely, on the investigation results forwarded to them. Consequently, they are shielded by qualified immunity for their discretionary actions.

**NO IMMINENT DANGER AT TIME OF FILING**

The determination of imminent danger is made as of the time plaintiff submits the lawsuit for filing. *Banos v. O'Guin*, 144 F.3d 883, 885 (5th Cir. 1998). The Seventh Amendment right to jury trial does not guarantee jury resolution of all factual disputes arising in the course of litigation, and when threshold issues, such as subject matter jurisdiction, turn on disputed facts, judges have the power to resolve these disputes to assure themselves of their courts' jurisdiction. *Dillon v. Rogers*, 596 F.43d 260, 271 (5th Cir. 2010) (citing *Wetmore v. Rymer*, 169 U.S. 115, 120-21, 18 S.Ct. 293, 42 L.Ed.682 (1898); *Chatham Condo. Ass'ns v. Centuy Vil., Inc.*, 597 F.2d 1002, 1012 (5th Cir. 1979). That fact-finding power also extends to fact issues on matters such as personal jurisdiction and venue. *Id*. (citing *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241-42 (5th Cir. 2008) (personal jurisdiction); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139-40 (9th Cir. 2004)(venue)). The issue of exhaustion of administrative remedies is a threshold issue in which judges have the power to resolve disputed issues of fact without the participation of a jury. *Dillon v. Rogers*, 596 F.43d 260, 272 (5th Cir. 2010).

Since imminent danger of serious physical injury is a threshold issue which must be addressed and resolved before an inmate who has accrued three strikes is even allowed to proceed as a pauper under 28 U.S.C. 1915(g), disputed facts on this issue must also be resolved by a judge without the participation of a jury. Given the additional facts provided by plaintiff and those to which he agreed at the hearing, which was conducted after discovery was provided to plaintiff by defendants and without any objection by plaintiff that further discovery was needed, it is clear that plaintiff's allegations against defendants GRIMES, SLOAN, SHIPP, NOVAK, and HASKINS fail to show he was in imminent danger of serious physical injury at the time he filed this lawsuit. Instead, accepting plaintiff's factual allegations as true, at the time

of filing plaintiff had suffered two minor attacks, for one of which he did not even seek medical help. He had reported these attacks, and they had been investigated thoroughly. Nothing before the Court shows plaintiff was in imminent danger of serious physical injury when he filed this lawsuit, three months after the alleged inmate attacks.

As the Court noted at the hearing in this cause, plaintiff stated this <u>lawsuit</u> <u>was</u> <u>about</u> <u>two</u> <u>attacks</u>, <u>both</u> <u>of</u> <u>which</u> <u>he</u> <u>reported</u> <u>and</u> <u>which</u> <u>were</u> <u>investigated</u>. Plaintiff complained the investigations did not result in a transfer to another unit. Thus, plaintiff has waived his claim of retaliatory property deprivation by defendants ROWLANDS and KIZER and his claim that defendant HOLLIGAN placed him in a cell with a gang member who took plaintiff's radio and headphones with the "tacit and implicit approval" of defendants HOLLIGAN, GRIMES, ROLANDS and other officers. In any event, these allegations do not support a claim of imminent danger of serious physical injury and are, therefore, insufficient to justify a grant of pauper status.

Lastly, the Court notes that, although plaintiff alleges defendant ROWLANDS responded to his complaint about July 14, 2007 attack by telling him he would have to "f__k, fight, or hit the fence," plaintiff also states he was allowed to file a life endangerment report and that it was investigated. Nothing in plaintiff's allegations shows he was harmed by defendant ROWLANDS' remark and, more importantly, nothing indicates he was placed in imminent danger of serious physical injury because of it.

For the reasons set forth above, plaintiff's claims fail to state a claim on which relief can be granted, are frivolous, and are not sufficient to bring this lawsuit within the subsection (g) exception to the bar against a grant of pauper status.

12

**CREDIBILITY**

Because of plaintiff's previous designation as a litigant who has sustained three"strikes,"

he is barred from filing further civil proceedings in forma pauperis while a prisoner unless he

alleges facts showing he is in imminent danger of serious physical injury.  28 U.S.C. § 1915(g).

In screening an inmate's claims, the Court has the authority under section 1915(e) to "pierce the

veil of the complaint's factual contentions" and dismiss those claims whose factual contentions

are clearly baseless.  *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728. 1730, 118 L.Ed.2d 340

(1992).  The Supreme Court has "reject[ed] the notion that a court must accept as 'having an

arguable basis in fact,' [citation omitted] all allegations that cannot be rebutted by judicially

noticeable facts."  *Denton v. Hernandez*, 504 U.S. at 32, 112 S.Ct. 1733.

For purposes of the 1915(g) exception to the bar against proceeding in forma pauperis,

imminent danger of serious physical injury is judged as of the date the complaint is filed.  *Banos*

*v. O'Guin*, 144 F.3d 883, 885 (5th Cir. 1998).  The Court notes the instant suit is at least the fifth

lawsuit by plaintiff claiming he was endangered by his assignment to the Clements Unit.  Other

lawsuits include: (1) Cause No. 4:07-CV-2516 (TXSD) collusion by all defendants to "give

plaintiff something to complain about" by transferring him to a unit where his life would be in

constant jeopardy; (2) Cause No. 2:07-CV-0192 (TXND) plaintiff's life endangered by all

defendants' writing false disciplinary cases in retaliation for his exercise of constitutional rights;

(3) Cause No. 2:08-CV-0193 (TXND) plaintiff's life endangered by all defendants by denying

him legal supplies, interfering with his mail and writing him false disciplinary cases; and

(4) Cause No. A-07-CA-517 (TXWD) all defendants colluding against plaintiff to put his life in

danger.

Given plaintiff's history of repeated lawsuits containing these same or similar allegations against other TDCJ-CID classification officials and other officers at the Clements Unit and at other units, the inconsistencies between plaintiff's *Spears* hearing allegation of two separate assaults and the lack of observable injuries, and the changing nature of plaintiff's allegations about the alleged attacks, the Court FINDS plaintiff's claim of imminent danger of serious physical injury at the time suit was filed is not credible for purposes of the 1915(g) exception to the bar against further proceedings in forma pauperis by plaintiff. As previously set forth, the credibility determination regarding this "threshold" issue of imminent danger is distinguished from the Court making a credibility determination on the merits of a prisoner's claims in a § 1983 lawsuit. If such a determination were not so permitted, an abusive inmate litigant, with three strikes, will always and repeatedly be permitted to avoid the bar to proceeding in forma pauperis merely by parroting whatever factual allegations, even if false, which will create an appearance of imminent danger.

## CONCLUSION

For the reasons set forth above and pursuant to Title 28, United States Code, sections 1915A and 1915(e)(2), as well as Title 42, United States Code, section 1997e(a), it is the RECOMMENDATION of the Magistrate Judge to the United States District Judge that plaintiff's claims be dismissed with prejudice as frivolous and for failure to state a claim on which relief can be granted, and that all of plaintiff's claims be dismissed for failure to show plaintiff is in imminent danger of serious physical injury at the time he filed the instant suit in federal court.

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 2nd day of September, 2010.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


## \* <u>NOTICE OF RIGHT TO OBJECT</u> \*

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).